ATTACHMENT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
Scott L. Poff, Clerk
United States District Court
By staylor at 2:26 pm, Feb 06, 2018

| | |
|---|---|
| JULIE NORTHRUP AND RICKARD SCRUGGS ) ) ) Plaintiffs ) v. ) CITY OF BRUNSWICK, GEORGIA, et. al. ) ) Defendants. ) | CIVIL ACTION Civil Action No.: 2:17-cv-00126 |

**FIRST AMENDED COMPLAINT**

1. Now come the plaintiffs, JULIE NORTHRUP AND RICKARD SCRUGGS, by and through their attorney, E. Michael Ruberti, Esq. and complaining against Defendants, Kevin Jones, Paul George, Matthew J. Doering, Chad Lowther, Anthony Clark, Cory Mallard, and John Doe, allege as follows:

**JURISDICTION AND VENUE**

2. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States, particularly the Civil Rights Act, Title 42 U.S.C. §§ 1983 and 1988.

3. The jurisdiction of this court is invoked under the provisions of Title 28, U.S.C. §§ 1331 and 1343.

4. Venue is placed in this district because it is where some or all of the defendants reside and where the events complained of occurred.

**PARTIES**

5. Plaintiffs Northrup and Scruggs (or, "Plaintiffs") are now, and at all times material herein

1

were, residents of St. Simons Island, Glynn County, Georgia.

6. Defendant City of Brunswick is a local governmental agency of the State of Georgia.

7. Defendant City of Brunswick maintains and operates the City of Brunswick Police Department.

8. Defendant Glynn County is a local governmental agency of the State of Georgia.

9. Defendant Glynn County maintains and operates the Glynn County Police Department.

10. Defendants, Kevin Jones, Paul George, Matthew J. Doering, Chad Lowther, Anthony Clark, Cory Mallard, and John Doe, are now, and at all times material herein were, duly appointed, employed, and acting police officers of the City of Brunswick Police Department and/or the Glynn County Police Department.

11. Defendants Kevin Jones, Paul George, Matthew J. Doering, Chad Lowther, Anthony Clark, Cory Mallard, and John Doe are sued both individually and in their official capacity.

12. At all times material herein, Defendant, Matthew J. Doering, was the duly appointed Chief of Police of the Glynn County Police Department, and Defendant, Kevin Jones, was the duly appointed Chief of Police of the City of Brunswick Police Department.

13. At all times material herein, Defendant George was an Investigator employed by the City of Brunswick Police Department.

14. At all times material herein, Defendants Lowther, Clark, Mallard and Doe were, respectively, Investigator, K-9 Officer, Officer and Officer employed by the Glynn County Police Department.

## CAUSE OF ACTION

15. On January 18, 2017, at approximately 2:19 P.M. Defendant George initiated a traffic stop of

a 2013 Chevrolet Avalanche in which Plaintiffs were riding at the intersection of Frederica Road and Silver Lake Road on St. Simons Island, Glynn County, Georgia.

16. At the time of the stop, Scruggs was driving the Avalanche and Northrup was riding in the front passenger seat.

17. Upon making the stop, Defendant George identified himself to Plaintiffs as, "Corporal George with the narcotics unit," or words to that effect, and stated that the reason for the stop was that the license plate on the Avalanche was registered to a vehicle other than the Avalanche.

18. Defendant George knew that his assertion that he stopped the Avalanche because he had reason to believe that the license plate was registered to a vehicle other than the Avalanche was false.

19. Defendant's George's stop of Plaintiffs was unlawful.

20. After initiating the stop, Defendant George asked Scruggs' for his driver's license and the vehicle's registration, and Scruggs handed him his driver's license.

21. Northrup then handed Defendant George registration and insurance documentation for the Avalanche in response to the Defendant's request to Scruggs.

22. The registration and insurance documentation that Northrup handed to Defendant George objectively confirmed that the license plate on the Avalanche matched its registration and insurance.

23. At that point, approximately 2:21 p.m., Defendant George's mission, i.e., his articulated reason for the traffic stop, had terminated, because the Avalanche's registration and license plate matched, and he no longer had any lawful authority to continue to detain either of the Plaintiffs.

3

24. Nonetheless, rather than permit Plaintiffs to continue on their way, and without either reasonable suspicion or probable cause, Defendant George continued to detain Plaintiffs by asking Plaintiff Scruggs if he had anything illegal in the Avalanche or on his person.

25. Scruggs denied having anything illegal in the Avalanche or on his person.

26. Defendant George then, and still without either reasonable suspicion or probable cause, continued to detain Plaintiffs by asking Plaintiff Scruggs if he would consent to being searched.

27. Scruggs refused to consent to being searched.

28. Defendant George then, and still without either reasonable suspicion or probable cause, continued to detain Plaintiffs by asking Plaintiff Northrup if she would consent to his searching the Avalanche.

29. Northrup refused George's request to search the Avalanche.

30. Defendant George then, without provocation on the part of either Plaintiff, and without reasonable suspicion or probable cause, continued to detain Plaintiffs by ordering them to exit the Avalanche.

31. Defendant George then continued to detain Plaintiffs by ordering them to stand behind the Avalanche.

32. Plaintiffs complied with Defendant George's order by exiting the Avalanche and standing behind it as directed.

33. Defendant George then entered his patrol vehicle and subsequently asked dispatch for a K-9 Unit.

34. Defendant Lowther responded to Defendant George's request for a K-9 Unit, saying that he was "out on 82," or words to that effect.

35. Defendant Lowther was presumably referring to Highway 82 in western Glynn County, from where, at the very least, it takes some twenty (20) minutes of driving time to reach the location where George was detaining Plaintiffs without either reasonable suspicion or probable cause.

36. Defendant George responded to Defendant Lowther, stating, "I have to write some citations and need a County officer to bring me some extra copies, so if you can, try your best to get here ASAP", or words to that effect.

37. Defendant George then contacted dispatch, and provided the Avalanche's tag number.

38. Dispatch responded to Defendant George by confirming that the Avalanche's license plate did in fact match its registration.

39. When dispatch confirmed to Defendant George that the license plate on the Avalanche matched its registration, that was the second time it had been objectively confirmed to Defendant George that his articulated reason for making the traffic stop was invalid.

40. Defendant George then asked dispatch to verify Scruggs' driver's license.

41. Dispatch responded to Defendant George by confirming that Scruggs' driver's license was valid.

42. The time of day was approximately 2:30 P.M.

43. Dispatch's confirmation that the Avalanche was properly registered and that Scruggs had a valid driver's license, was the second time that it had been objectively confirmed to George that he had no lawful authority to continue to detain either of the Plaintiffs.

44. Nonetheless, Defendant George, still without reasonable suspicion or probable cause, continued to detain plaintiffs, who, pursuant to his directive, remained standing behind the Avalanche.

45. Nevertheless, Defendant George, at approximately 2:31 P.M., falsely stated to Defendant Clark, Mallard or Doe, who had arrived at the scene, that he initially stopped the Avalanche because the tag did not match, but that he must have entered it wrong the first time because it did in fact match the second time.

46. George also stated to Defendant Clark, Mallard or Doe that he had executed a search warrant at Scruggs' home "a while ago", and that he "believed that [Scruggs] was on probation, which would allow [him] to perform a Fourth Amendment search on him," and that he "was trying to find out if [Scruggs] was on probation", or words to that effect.

47. Defendant George made this false statement because he was seeking an excuse to detain Plaintiffs until such time as the K-9 unit arrived, thereby enabling him to conduct a dog sniff of the Avalanche.

48. While Defendant George was purportedly attempting to find out whether or not Scruggs was on probation, Defendants Lowther and Clark, Mallard or Doe arrived at the scene, with Defendant Lowther handling the K-9 police dog.

49. Defendant George's decision to detain Plaintiffs while he attempted to determine whether Scruggs was on probation was an unlawful detention and seizure of Plaintiffs, separate and apart from his earlier unlawful detentions and seizures of Plaintiffs.

50. Defendant George had neither reasonable suspicion nor probable cause to believe that Scruggs was on probation.

51. Scruggs was not on probation.

52. Defendant George's claim that he was detaining Plaintiffs because he believed that Scruggs was on probation was false.

53. Alternatively, Defendant George's detention of Plaintiffs was unlawful even if he had

reasonable suspicion or probable cause to believe that Scruggs was on probation.

54. Defendant George's detention of Northrup was unlawful under any set of circumstances.

55. Defendant Lowther, who was in control of the K-9 police dog, ordered the dog to sniff around the Avalanche.

56. The dog sniff was an unlawful search of Scruggs' and Northrup's persons.

57. The dog sniff was an unlawful search of Scruggs' and Northrup's effects, which were the Avalanche and its contents.

58. The dog did not alert to any drugs or other contraband on Scruggs' or Northrup's persons.

59. The dog did not alert to any drugs or contraband in, on or around the Avalanche.

60. Defendant George issued Scruggs a citation for not obtaining a Georgia driver's license within 30 days of residing in Georgia.

61. The time was approximately 2:53 P.M.

62. The State Court of Glynn County later dismissed this citation.

63. Defendants' unlawful detention and seizure of Plaintiffs ended at approximately 2:54 P.M.

64. Defendants' unlawfully detained and seized Plaintiffs for a period of approximately thirty-three minutes, from approximately 2:21 P.M. to approximately 2:54 P.M.

65. At no time during the above-mentioned periods of unlawful search of Plaintiffs or at any time during the above mentioned periods of unlawful detention and seizure of Plaintiffs, were Plaintiffs charged with any crime, and, at the end of such periods, Plaintiffs were released without any charge being made (other than the alleged minor violation that was dismissed by the State Court), and no charge has subsequently been made.

66. None of the Defendants, at any time during the above-mentioned unlawful searches or at any time during the above mentioned unlawful detentions and seizures, had in any of their

possession any warrant issued by any judge, court, or magistrate authorizing a search of either of Plaintiffs' persons or the Avalanche, or for the search, arrest, detention or seizure of either Plaintiff, and in fact no warrant had been issued by any court, judge, or magistrate for any such search, arrest, detention or seizure of either Plaintiff.

67. The unlawful acts of detention, search and seizure depriving Plaintiffs of their Fourth Amendment rights to be free of the detentions, searches and seizures alleged hereinabove (a) were committed pursuant to the unconstitutional instructions, policies, practices and/or customs of Defendants City of Brunswick, City of Brunswick Police Department, Glynn County, Glynn County Police Department, Doering, and/or Jones, or (b) were committed with the knowledge and consent of these Defendants, or (c) were thereafter approved and ratified by these Defendants.

68. Each of the Defendants, individually and in concert with the others, acted under pretense and color of law and their official capacity, but such acts were beyond the scope of their jurisdiction and without authorization of law. Each Defendant, individually and in concert with the others, acted willfully and knowingly, and caused Plaintiffs to be deprived of their individual rights to freedom from unlawful searches and seizures of their persons, papers, and effects, and of their individual rights to freedom from unlawful search, arrest, detention, seizure and imprisonment, all of which rights are secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §§ 1983 and 1988.

69. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to a reasonable allowance for attorney fees as a part of their costs

WHEREFORE, each Plaintiff requests (a) a trial by jury; and (b) judgment against Defendants as

follows:

1. Compensatory damages against each and every Defendant in an amount to be proven at trial;

2. Punitive damages against each of the individual Defendants in an amount to be proven at trial;

3. Reasonable attorney fees;

4. Costs of suit; and

5. Such other and further relief as the court deems just and proper.

Dated:  January 29, 2018

                                  E. MICHAEL RUBERTI, ESQ., LLC

                                  */s/ E. Michael Ruberti*
                                  E. Michael Ruberti, Esq.
                                  Georgia Bar No.:  618343
                                  Post Office Box 20649
                                  St. Simons Island, Georgia  31522
                                  Phone:  (912) 634-2130
                                  Fax:  (912) 634-3783
                                  Email:  emr@rubertilaw.com